In the Matter of the Assignment of PHILIP F. KOBBE *et al.* to ALGERNON S. SULLIVAN for the Benefit of Creditors. Application of NEUBERGER *et al.*

[SPECIAL TERM.]

(Decided January 5th, 1880.)

A principal may lose his right to follow the proceeds of his goods when his factor's assignee for benefit of creditors, in ignorance of his rights, has paid them out in the ordinary course of administration of the assigned estate.

A principal will estop himself from claiming the proceeds of his goods by presenting to the assignee a demand in the ordinary form of a creditor's claim, and accepting a dividend in common with unpreferred creditors. If the whole proceeds have been consumed in paying dividends, the principal has no greater rights than an ordinary unpreferred creditor ; but if he can distinguish and trace in the hands of the assignee any portion of the proceeds of his goods as yet undisposed of, he may recover it. An examination *pro interesse suo* is the method of ascertaining his rights.

APPLICATION by creditors of the assignors in a general assignment for the benefit of creditors, for the payment to them of the proceeds of goods consigned by them to the assignors.

The facts are stated in the opinion.

VAN HOESEN, J.—In order to determine correctly the rights of the petitioners, it must first be ascertained whether or not they consigned goods to Kobbe & Ball with the understanding that the latter firm might mingle, and sell, commingled, the goods of divers consignors, take in payment one secur-

Matter of Kobbe.

ity or one sum for the goods of several principals, deposit the money, or use the security, as their own, and pay the consignors as general creditors merely, and not as principals having a right, each to the proceeds of his own goods. If there were such an understanding, the Neubergers cannot now claim from the assignee the identical proceeds of the goods consigned by them, nor can they claim any superiority to ordinary creditors. The determination of this matter in favor of the assignee, would be a complete answer to the petition. If no such understanding existed, then another question presents itself: Did not the Neubergers, by filing their claim as ordinary creditors, and taking a dividend calculated upon the theory that there was no consignor entitled to the proceeds of his goods which Kobbe & Ball had held as factors, so mislead the assignee that it would be most unjust to permit them now to alter their claim, and assert the right which a consignor has to the avails of his goods in the keeping of the assignee of his factor? That they are so estopped, seems to me to admit of no question. The assignee, not aware that they had any claim superior to that of any other creditor, but assuming, as he had a right to do from the character of the claim which they presented, that they were upon an equality with the other creditors, declared and paid a dividend estimated upon the assets as a fund for the payment of all creditors equally. If they are now allowed to assert a claim to the proceeds of the goods which they consigned to Kobbe & Ball, the result would be to make the assignee liable for such part of those proceeds as he has paid out in dividends, and to put him in the position of one who has misapplied trust funds. Nothing more unfair than this can be conceived. It is said that by examining the books, he might have known that the Neubergers were consignors, that Kobbe & Ball were factors, and that the usual rule which entitles the consignors to recover unsold goods, or to follow the proceeds of goods which have been sold, was applicable to the relations between the parties. But, if there were such an understanding as the assignee alleges, the books would not be the guide for the ascertainment of the petitioners' rights. Moreover, it was for the petitioners to assert their claim, and

Matter of Risley.

if they chose to enroll themselves in the ranks of ordinary creditors, they cannot complain if the assignee left them in the station which they voluntarily assumed.

If, however, they are entitled to reclaim the proceeds of the goods which Kobbe & Ball sold as their factors, it is not too late for them to assert their right to such part of the assets still in the hands of the assignee as can be distinguished and traced as the avails of their property. As to those assets there is no estoppel.

I will direct a reference to Jeremiah Loder, Esq., to inquire whether such an understanding as I have spoken of existed, and whether there are now any assets distinguishable and traceable as the proceeds of goods consigned by the petitioners to Kobbe & Ball. I leave open the question, whether those assets can be paid over to the petitioners if the expenses of executing the assignment require the application of them to the payment of those expenses.

Order accordingly.